IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THE ESTATE OF GARY BRANNON, *by and through its administrator Mitchel Brannon*, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) CASE NO. 2:24-cv-00005-RAH<br>) |
| CITY OF WETUMPKA, *et al.*, | )<br>) |
| Defendants. | )<br>) |

## **MEMORANDUM OPINION AND ORDER**

### INTRODUCTION

In this 42 U.S.C. § 1983 action, Plaintiff Mitchell Brannon, as the Administrator for The Estate of Gary Brannon (the Estate), alleges that his brother, Gary Brannon (Gary), died as a result of injuries suffered while housed in the Elmore County Jail. In its Second Amended Complaint, the Estate claims that Bill Franklin, Sheriff of Elmore County, as well as various fictitious Elmore County Sheriff's Department and Wetumpka Police Department representatives violated Gary's Fourth and Fourteenth Amendment rights during an "incident" at the jail when force was allegedly used on Gary.

Pending before the Court is the motion to dismiss filed by Sheriff Franklin. The Estate has filed a response to the motion and Sheriff Franklin has filed a reply. This matter is thus ripe for review and, for the following reasons, will be granted.

### FACTUAL ALLEGATIONS

Construing the well-pleaded factual allegations in the Second Amended Complaint as true, as the Court must at this procedural stage, the facts giving rise to this lawsuit are as follows:

1

On November 8, 2022, Gary Brannon was arrested by the Wetumpka Police Department (WPD) for driving under the influence and was taken to the Elmore County Jail. (Doc. 43 at 4–5.)  Approximately 48 hours later, Mitchell Brannon, Gary's brother, learned that Gary had been involved in an "incident" during which Gary was "battered by unspecified officers" during the booking process.  (*Id.* at 6.)  According to Mitchell, Gary "was repeatedly and viciously struck on the head by . . . unknown Elmore County Corrections Officers, and Michael V. Templin, and/or other members of the City of Wetumpka Police Department, and/or unknown Elmore County deputy sheriffs, and/or unknown Elmore County or City of Wetumpka jailers, employees, and/or agents." (*Id.*)  After the incident, Gary "was transported to a local hospital to receive medical attention where a portion of his skull was removed to relieve pressure on his brain."  (*Id.*)  The beating left Gary paralyzed, with significant brain damage, and in a semi-vegetative state. (*Id.*)  Gary died from his injuries several months later on July 8, 2023.  (*Id.*)

In its Second Amended Complaint, the Estate brings claims for excessive force against Officer Michael Templin and several fictitious defendants; supervisory liability claims against the City of Wetumpka, Sheriff Franklin, and Warden Tracey Jackson; and wrongful death claims against Officer Templin, the City of Wetumpka, and various fictitious defendants.  The Estate has since voluntarily dismissed its claims against Officer Templin, Warden Jackson, and the City of Wetumpka, leaving Sheriff Franklin and the fictitious parties as the remaining defendants.

**LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8 of the Federal Rules of Civil Procedure, which requires: "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must "take the factual allegations in the

complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citing *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663–64 (citing *Twombly*, 550 U.S. at 556). But if the facts in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief,'" and the complaint must be dismissed. *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## DISCUSSION

The Estate brings a § 1983 supervisory claim against Sheriff Franklin. In the Second Amended Complaint, the Estate asserts that Gary's Fourth and Fourteenth Amendment rights were violated when Gary was subjected to excessive force while at the Elmore County Jail by certain unknown and unidentified persons, who the Estate broadly alleges are sheriff's department deputies, WPD officers, or both.

Particular to Sheriff Franklin, the Estate alleges that Sheriff Franklin "is liable for the violation of [Gary's] federally protected Fourth Amendment and Fourteenth Amendment right to be free of excessive uses of force because he failed to supervise, discipline, and/or adequately train his agents, servants, and/or employees concerning the use of force." (Doc. 43 at 16.) And that Sheriff Franklin "has in place the policy and/or custom of failing to supervise, discipline, and adequately train his agents, servants, and/or employees concerning the use of force." (*Id.*) The Estate further

3

alleges that Sheriff Franklin "is fully aware of the widespread use of excessive force employed by Elmore County Deputy Sheriffs, corrections officers, and jailers." (*Id.*) And that Sheriff Franklin "was notified, prior to the filing of this action, of the need to correct the constitutional deprivations resulting from the use of excessive force employed by Elmore County Deputy Sheriffs, corrections officers, and jailers, through the filing of the following lawsuits and pending criminal action." (*Id.*)

Sheriff Franklin has filed a motion to dismiss in which he argues the Second Amended Complaint fails to state a § 1983 claim against him, and that regardless, he is entitled to qualified immunity. At the motion to dismiss stage, the Rule 12(b)(6) standard and the qualified immunity defense become intertwined. *Wooten v. Campbell*, 49 F.3d 696, 699 (11th Cir. 1995). As such, if the Second Amended Complaint fails to state a claim against Sheriff Franklin on which relief may be granted, then it must be dismissed. Fed. R. Civ. P. 12(b)(6).

Qualified immunity immunizes Sheriff Franklin from liability if the Second Amended Complaint fails to state a violation of a "clearly established statutory or constitutional right[] of which a reasonable person would have known." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[A] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Wooten*, 49 F.3d at 699 (quoting *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).

"Because qualified immunity is a defense not only from liability, but also from suit, it is 'important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible.'" *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998)). "It is therefore appropriate for a district court to grant the

4

defense of qualified immunity at the motion to dismiss stage if the complaint 'fails to allege the violation of a clearly established constitutional right.'" *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001)); *see also Williams v. Board of Regents of Univ. Sys. Of Ga.,* 477 F.3d 1282, 1300 (11th Cir. 2007) ("If a defendant asserts a qualified immunity defense in a Rule 12(b)(6) motion to dismiss, the court should grant qualified immunity if the plaintiff's complaint fails to allege a violation of a clearly established constitutional or statutory right.") (citing *Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997) (per curiam)). "An official asserting the affirmative defense of qualified immunity must initially establish that he [or she] was acting within his [or her] discretionary authority." *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1136 (11th Cir. 2007).

The Second Amended Complaint makes clear that Sheriff Franklin was acting within his discretionary authority because he was acting in his supervisory capacity as sheriff at the time of the incident. *See Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1265 (11th Cir. 2004) (outlining that a government official acts within scope of his or her discretionary authority when "(a) performing a legitimate job-related function . . . (b) through means that were within his [or her] power to utilize."). Therefore, the question here is whether, "[t]aken in the light most favorable to the party asserting the injury . . . the facts alleged show the [defendant's] conduct violated a constitutional right," and if so, whether the right is clearly established. *Gonzalez*, 325 F.3d at 1234 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

The Estate asserts that Sheriff Franklin violated Gary's Fourth and Fourteenth Amendment rights in his supervisory role as sheriff when Gary was subjected to excessive force by others while at the Elmore County Jail. "[T]he standard by which a supervisor is held liable in her [or his] individual capacity for the actions of a

5

subordinate is extremely rigorous." *Christmas v. Harris Cnty., Ga.*, 51 F.4th 1348, 1355 (11th Cir. 2022) (quoting *Braddy v. Fla. Dep't of Lab. & Emp. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998)). "It is well established in this Circuit that supervisory officials are not [sic] liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'" *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting *Belcher v. City of Foley,* 30 F.3d 1390, 1396 (11th Cir. 1994)). "Supervisory liability lies where the defendant personally participates in the unconstitutional conduct or there is a causal connection between such conduct and the defendant's action." *Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1236 (11th Cir. 2010).

As there is no allegation that Sheriff Franklin personally participated in the use of force incident, the pertinent inquiry is whether the Estate has pled sufficient facts plausibly showing a causal connection, which can be shown three ways:

> [(1) W]hen a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he [or she] fails to do so . . . . [(2) W]hen a supervisor's custom or policy . . . results in deliberate indifference to constitutional rights . . . or [(3)] when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), abrogated in part on other grounds by *Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010) (internal quotation marks and citations omitted) (quoting *Gonzalez*, 325 F.3d at 1234–35). With these standards in mind, the Court finds that the Estate has failed to sufficiently allege a plausible claim showing a causal connection.

First, the Estate makes no allegation that Sheriff Franklin directed anyone to act unlawfully or knew that any particular subordinates would act unlawfully and failed to stop them from doing so as it concerned Gary. Indeed, there is no identification of the subordinate deputy sheriffs or jail staff under Sheriff Franklin's

supervision who purportedly used force, excessive or otherwise, on Gary. The Estate does mention Officer Templin and Warden Jackson, but the Estate has voluntarily dismissed them both from the lawsuit. (*See* Doc. 65; Doc. 66; Doc. 67; Doc. 72.) As to Officer Templin, who appears to have been involved in Gary's arrest, he was employed with the WPD, a municipal law enforcement agency over which the Sheriff of Elmore County has no control. *See* ALA. CODE § 11-43-55 (providing that municipal law enforcement agencies are under the supervision of the chief of police); ALA. CODE § 36-22-3 (outlining the duties of a sheriff).

Similarly, the Estate does not identify any facts regarding Warden Jackson, her employer, her training, or any supervision that Sheriff Franklin may have over her. The same holds true for the fictitious defendants who are vaguely alleged to have been involved in some manner in the arrest, transport, booking, and force used against Gary. *See Williams v. Dekalb Cnty. Jail*, 638 F. App'x 976, 976–77 (11th Cir. 2016) (per curiam) (holding that the naming of fictitious defendants in an excessive force claim was "insufficient to sustain a cause of action.") (quoting *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (per curiam)).

Second, as to custom or policy, "[d]emonstrating a policy or custom requires 'showing a persistent and wide-spread practice.'" *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1332 (11th Cir. 2007) (quoting *Depew v. City of St. Marys, Ga.,* 787 F.2d 1496, 1499 (11th Cir. 1986)). "[A] policy is a decision that is officially adopted . . . or created by an official of such rank that he or she could be said to be acting on behalf of the [governmental agency]." *Id*. (quoting *Sewell v. Town of Lake Hamilton,* 117 F.3d 488, 489 (11th Cir. 1997)). "A custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law." *Id*. (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

Here, the Estate does not point to any specific custom or policy, official or otherwise. The Estate does broadly reference a custom or policy, but vague, bare-

7

boned, passing reference to a policy or custom, totally devoid of details, is insufficient. *See, e.g., Brown v. Elmore Cnty. Comm'n*, No. 2:20-cv-281-RAH, 2022 WL 779772, at *8 (M.D. Ala. Mar. 14, 2022) (dismissing a claim when the complaint had not identified a specific policy or custom); *Johnson v. Andalusia Police Dep't*, 633 F. Supp. 2d 1289, 1301–02 (M.D. Ala. 2009) (dismissing a claim where the alleged violation of rights did not result from any department policy or custom); *Manning v. Mason*, No. 10–cv–925-MEF, 2011 WL 1832539, at *4 (M.D. Ala. May 13, 2011) (dismissing a claim where the plaintiffs failed to identify a specific policy or custom).

But the Estate may prove a policy or custom, or lack of one, by pointing to a persistent and wide-spread practice; that is, through multiple incidents. *Depew*, 787 F.2d at 1499 ("To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice."). Multiple incidents may show a history of widespread abuse that puts the responsible supervisor on notice of the need to correct the alleged deprivation. Multiple incidents may also show that a supervisor has actual or constructive notice of a particular omission or deficiency in training. *See Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1053 (11th Cir. 2014) ("To establish that supervisor was on actual or constructive notice of the deficiency of training, '[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary.'") (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). However, "random acts or isolated incidents are insufficient to establish a custom or policy." *Depew*, 787 F.2d at 1499.

Here, to the extent the Estate attempts to plead facts supporting its claim against Sheriff Franklin, the Estate's facts are rooted in three lawsuits that the Estate identifies in the Second Amended Complaint. These three lawsuits, as they are described in the Second Amended Complaint, do not plausibly support a claim against Sheriff Franklin.

First, the facts giving rise to the three lawsuits span a twenty-year period. As such, these lawsuits do not show, or even suggest, a persistent and widespread practice of anything, let alone one that is obvious, flagrant, rampant and of continued duration. *See Hartley*, 193 F.3d at 1269 ("The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.") (quoting *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir. 1990)). At best, these lawsuits evidence isolated occurrences. *See Clark v. Evans*, 840 F.2d 876, 884–86 (11th Cir. 1988) (at Rule 12(b)(6) stage, holding four incidents where a department of corrections employee failed to process commitment orders in five years would not have been sufficient to put supervisory official on notice of need for improved training or supervision); *Hawk v. Klaetsch*, 522 F. App'x 733, 735–36 (11th Cir. 2013) (at summary judgment stage, holding three incidents where an officer used excessive force over span of nearly five years did not constitute frequent, widespread, or rampant abuse).

Second, the three lawsuits do not plausibly show a *pattern of similar* constitutional violations by Elmore County Sheriff's Department employees. *Cotney v. Franklin*, No. 2:03-cv-01181, M.D. Ala., was filed in 2003, and concerned an allegation that a jail administrator twice kicked a compliant detainee who had activated the sprinkler system. *Pears v. Franklin*, No. 2:21-cv-00668, M.D. Ala., concerned the use of force by sheriff's deputies against two members of the Pears family at their home where one Pear family member was shot after suffering from a psychotic episode. The incident did not occur at the Elmore Country Jail or any sheriff's department detention facility. *United States v. Hicks*, No. 2:23-cr-00351, M.D. Ala., was a criminal case against an Elmore County deputy who had allegedly punched and kicked a restrained individual during an arrest. These three incidents are not sufficiently similar to plausibly infer a widespread practice of constitutional

violations that put Sheriff Franklin on notice of the need to correct the alleged deprivations.

As a result, the Estate has failed to plead a plausible claim for a constitutional violation against Sheriff Franklin, and he is therefore entitled to qualified immunity. Since Sheriff Franklin is the last remaining individually named defendant, the only remaining defendants are unnamed fictitious defendants. As fictitious party pleading generally does not exist in federal court and since the Estate has not provided a highly specific description of each of these fictitious individuals such that process can be served, the claims against those defendants are due to be dismissed as well. *See Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) ("As a general matter, fictitious-party pleading is not permitted in federal court.").

## CONCLUSION

For the foregoing reasons, it is **ORDERED** as follows:

1. The Motion to Dismiss (doc. 53) filed by Defendant Sheriff Bill Franklin is **GRANTED**;
2. The claims against the Sheriff Bill Franklin are **DISMISSED** with prejudice;
3. The claims against all fictitious defendants are **DISMISSED** without prejudice;
4. As there are no further claims in this case, this case is **DISMISSED**; and,
5. Costs are taxed against the Plaintiff.

**DONE** on this the 6th day of September 2024.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE